**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| **DANIEL STONE** on behalf of himself and all others similarly situated,<br><br>**Plaintiff**,<br><br>**v.**<br><br>**WAKEFIELD & ASSOCIATES, LLC,**<br><br>**Defendant**. | **CASE NO. 1:25-cv-03749**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Daniel Stone ("Plaintiff"), individually and on behalf of all others similarly situated persons, allege the following against Wakefield & Associates, LLC ("Wakefield" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, amongst other things, investigation by his counsel and review of public documents, as to all matters:

## NATURE OF THE ACTION

1. This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Wakefield, a third-party company that handles healthcare providers' revenue operation and debt collections (the "Data Breach").

2. Defendant is a multi-state medical debt collection and revenue-cycle management firm that works on behalf of hospitals and healthcare providers to recover unpaid patient accounts,

manage billing and receivables, and pursue collection activities. This includes account servicing, credit-bureau reporting, and debt-validation communications.[1]

3. The Data Breach resulted in unauthorized disclosure, exfiltration, theft, and dissemination on the dark web of Defendant's clients' current and former patients' personally identifying information ("PII") and protected health information ("PHI"), including names, collection account information, Social Security numbers, driver's license or state identification card numbers, financial information, and health information. Plaintiff refers to both PII and PHI collectively as "Sensitive Information".

4. Defendant's Data Breach affects current and former patients of Defendant's clients who had no direct relationship with Wakefield, never sought one, and never consented to Wakefield collecting and storing their information.

5. Defendant took possession of Plaintiff's information from third parties and maintained it on its systems, assuming a duty to protect it. But despite admitting the necessity of proper safeguards, Defendant never implemented the security measures it promised.

6. Wakefield's "Notice of Data Privacy Event" indicates that the Data Breach occurred on or before January 17, 2025.[2] But Wakefield has offered almost no meaningful information about the intrusion, including how it learned that cybercriminals had accessed its systems. On information and belief, Wakefield did not start notifying victims until November 7, 2025, approximately ten months after the breach, and far too late to protect affected individuals.[3]

---

[1] *Wakefield & Assocs*., https://wakeassoc.com/ (last visited Nov. 19, 2025).
[2] *Notice of Data Privacy Event*, Wakefield, https://wakeassoc.com/privacy-policy (last visited November 19, 2025).
[3] *Notice of Security Incident*, Montana Department of Justice, https://dojmt.gov/office-of-consumer-protection/reported-data-breaches/ (last visited November 19, 2025)

7. It is unknown for precisely how long cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems, and thereby were allowing cybercriminals unrestricted access to the Sensitive Information in Defendant's care.

8. On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Sensitive Information. In short, Defendant's failures placed the Class's Sensitive Information in a vulnerable position which renders them as easy targets for cybercriminals.

9. Plaintiff is one of the many victims of the Data Breac. Plaintiff brings this Complaint against Defendant for failing to adequately secure and safeguard the sensitive information it collected and maintained in the course of its business operations.

10. The disclosure of Sensitive Information to cybercriminals is like opening a door that cannot be closed; the damage is immediate and irreversible. What was once private and protected is now exposed, unsecure, and forever at heightened risk of misuse.

## PARTIES

11. Plaintiff Daniel Stone is, and at all relevant times has been, a resident and citizen of South Carolina. Plaintiff received the Notice Letter, via U.S. mail, directly from Defendant, dated November 7, 2025.

12. Defendant Wakefield & Associates, LLC, is a Colorado Limited Liability Company with its principal place of business at 830 East Platte Avenue, Ste. A, Fort Morgan, Colorado 80701. Defendant can be served through its registered agent at: Legalinc Corporate Services Inc, 5865 Ridgeway Center Pkwy, Ste 389, Memphis, Tennessee 38120.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and Plaintiff and Defendant are citizens of different states.

14. This Court has personal jurisdiction over Defendant because it operates and maintains its principal place of business in this District.

15. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant's principal place of business is located in this District; Defendant maintains Class Members' Private Information in this District; and Defendant caused harm to Class Members residing in this District. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

***Defendant's Business***

16. Wakefield is a company that assists healthcare providers with revenue cycle and collections operations.[4]

17. In the ordinary course of its business, Defendant acquires and stores the Sensitive Information of thousands of its clients' current and former patients. By collecting and maintaining such data, Defendant assumed and expressly agreed to safeguard it in compliance with its policies and with state and federal legal requirements. Plaintiff and Class Members took reasonable measures to protect their Sensitive Information—yet Defendant failed to uphold the protections it promised.

---

[4] *Wakefield Home Page*, WAKEFIELD, https://wakeassoc.com/ (last visited November 19, 2025)

18. Indeed, in its Privacy Policy, Wakefield promises to "take precautions to ensure the security of your data in compliance with all applicable laws" including "physical, electronic, and procedural safeguards."[5]

19. Even while admitting its duty to protect patient data and promoting the strength of its cybersecurity practices, Wakefield, on information and belief, did not implement reasonable security controls, adopt adequate policies, or supervise its IT and data-security personnel. Ultimately, those omissions left glaring vulnerabilities throughout its systems, allowing cybercriminals to infiltrate its network and obtain the Sensitive Information entrusted to its care.

***The Data Breach***

20. Upon information and belief, Plaintiff's information was furnished to Wakefield as part of the billing process for medical services he received, and at least one of Plaintiff's healthcare providers is believed to have contracted with Wakefield.

21. Upon information and belief, Defendant collects and maintains its clients' current and former patients' Sensitive Information in its computer systems.

22. In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

23. According to Defendant's Breach Notice, Defendant "discovered suspicious activity related to certain systems."[6] Thereafter, it launched an investigation, which revealed that

[5] *Privacy Policy*, WAKEFIELD, https://wakeassoc.com/privacy-policy (last visited November 19, 2025).
[6] *Copy of Notice Letter* **EX. A**.

"there was unauthorized access and/or acquisition of certain files within the network on or before January 17, 2025."[7]

24. Therefore, Defendant has admitted that files were stolen from its systems. Defendant states that various types of Sensitive Information, including name, collection account information, Social Security numbers, driver's license or state identification card numbers, financial information, and health information were affected.[8]

25. Concerningly, the ransomware group "Akira" claimed credit for this attack on its dark web leak site on February 11, 2025.[9]

26. Akira's post stated that it was "ready to upload more than 13 GB of sensitive private corporate documents such as: SSNs, passport numbers, confidential licenses, agreements and contracts, financial data (audits, payment details, reports), contact numbers and e-mail addresses of employees and customers, medical insurance documents, internal correspondences, Medicare numbers, etc."[10]

27. Akira is known as a notorious cybercriminal group that often engages in this kind of behavior. In fact, the Federal Bureau of Investigation (FBI) and the Cybersecurity and Infrastructure Security Agency (CISA) released a joint report warning the public about Akira.[11] Specifically, the joint "Cybersecurity Advisory" (CSA) stated, inter alia, that:

---

[7] *Id.*

[8] *Notice of Data Privacy Event*, Wakefield, https://wakeassoc.com/privacy-policy (last visited November 19, 2025).

[9] *Akira Ransomware Group Strikes Again*, Cyber Press, https://cyberpress.org/akira-ransomware/ (last visited November 19, 2025).

[10] *Id.*

[11] #StopRansomware: Akira Ransomware, FBI & CISA (April 18, 2024) https://www.cisa.gov/news-events/cybersecurity-advisories/aa24-109a (last visited November 19, 2025).

a. "Since March 2023, Akira ransomware has impacted a wide range of businesses and critical infrastructure entities in North America, Europe, and Australia."[12]

b. "The FBI and cybersecurity researchers have observed Akira threat actors obtaining initial access to organizations through a virtual private network (VPN) service without multifactor authentication (MFA) configured[.]"[13]

c. "Akira threat actor leverage tools… to exfiltrate data." [14]

d. "Akira threat actors use a double-extortion model and encrypt system after exfiltrating [the] data. The Akita ransom note provides each company with a unique code and instructions to contact the threat actors via a .onion URL."[15]

e. "Akira threat actors do not leave an initial ransom demand or payment instructions on compromised networks, and [they] do not relay this information until contacted by the [breached party]."[16]

f. "To further apply pressure, Akira threat actors threaten to publish exfiltrated data on the Tor network, and in some instances have called victimized companies, according to FBI reporting."[17]

28. Ransomware groups can monetize stolen Private Information and sell it on the dark web as part of a full identity profile. Buyers can then use that information to conduct different

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

types of identity theft or fraud, such as filing a fake tax return, applying for a fraudulent mortgage or opening a bank account while impersonating the victim. [18]

29. As the Harvard Business Review noted, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[19]

30. According to the United States Cybersecurity and Infrastructure Security Agency ("CISA"), ransomware is a form of malware designed to encrypt files on a device, rendering any files and the systems that rely on them unusable.20 Thereafter, the cybercriminals demand a ransom payment in exchange for decryption, often threatening to sell or leak exfiltrated data if the ransom is not paid.[20]

31. Even if Defendant made the ransom payment, there is no guarantee that the Sensitive Information stolen in the Data Breach will be deleted. The stolen Sensitive Information is so valuable, and can easily be sold to another threat actor, so there is little incentive to delete it.[21]

32. Therefore, upon information and belief, Defendant waited until on or around November 7, 2025, before it notified the victims that their Sensitive Information was stolen in the

---

[18] Anthony M. Freed, Which Data Do Ransomware Attackers Target for Double Extortion?, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion (last visited November 19, 2025)

[19] Brenda R. Sharton, Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back (last visited November 19, 2025).

[20] Ransomware 101, CISA, https://www.cisa.gov/stopransomware/ransomware-101 (last visited November 19, 2025).

[21] Steve Adler, Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/ (last visited November 19, 2025).

breach. This was over 10 months after the breach started. Defendant kept the Class in the dark, thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

33. Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing its clients' patients' Sensitive Information. Thus, Defendant caused widespread injury and monetary damages.

34. Since the Breach, Defendant claims that it "implemented additional measures to further protect against similar incidents." However, such simple declarations are insufficient to ensure that Plaintiff's and Class Members' Sensitive Information will be protected from additional exposure in a subsequent data breach.[22]

35. Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements, explanation of benefits, and monitoring your free credit reports for suspicious activity and to detect errors."[23]

36. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

37. Upon information and belief, Wakefield has offered some Data Breach victims 12 months of complimentary credit monitoring, which does not adequately address the lifelong harm

---

[22] *See* Notice of Data Breach Letter
[23] *Id.*

that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

38. Even with several months' worth of credit monitoring services, the risk of identify theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

39. Upon information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its clients' current and former patients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

40. Despite the Defendant's intentional opacity about the root cause of the Data Breach and its impact, several facts can be gleaned from the notice including that: (1) this data breach was the work of cybercriminals; (2) cybercriminals successfully infiltrated Wakefield's network environment; and (3) once inside, cybercriminals targeted highly private information for download and theft.

41. Therefore, upon information and believe, Defendant's breach notice is purposely misleading, and intentionally downplays the severity of the Data Breach and the threat that it poses to thousands of individuals.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice***

42. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

43. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendant knew or should have known that its electronic records and consumers' Sensitive Information would be targeted by cybercriminals.

44. Healthcare data breach statistics clearly show there has been an upward trend in data breaches over the past 14 years, with 2021 seeing more data breaches reported than any other year since records first started being published by HHS' Office of Civil Rights ("OCR").[24]

45. In 2023, the OCR reported a 239% increase in hacking-related data breaches between January 1, 2018, and September 30, 2023, and a 278% increase in ransomware attacks over the same period.27 In 2019, hacking accounted for 49% of all reported breaches, and in 2023, 79.7% of data breaches were due to hacking incidents.[25]

46. Cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[26]

47. Cyberattacks on medical systems and on healthcare partner and provider companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report

---

[24] Steve Adler, Healthcare Data Breach Statistics, THE HIPAA JOURNAL (May 26, 2025), https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited November 19, 2025)
[25] *Id.*
[26] Gordon M. Snow Statement, FBI (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited November 19, 2025).

explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly.[27]

48. Therefore, the increase in such attacks and the attendant risk of future attacks was and has been widely known to the public and anyone in Defendant's industry, including Defendant.

***Plaintiff Daniel Stone's Experiences***

49. Plaintiff's information was provided to Wakefield due to his medical services being billed through Wakefield's services. On information and belief, one of Plaintiff's healthcare providers is a client of Wakefield.

50. On information and belief, Defendant held Plaintiff's Sensitive Information on its computer network at the time of the Data Breach.

51. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

52. Since the Data Breach, Plaintiff has also experienced a dramatic uptick in spam and phishing phone calls (approximately 30 per day) and emails, suggesting his Sensitive Information is being disseminated on the dark web. Additionally, Plaintiff has received several notices from credit monitoring sources that his PII was found on the dark web.

53. As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Breach Noice and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

---

[27] Ben Kochman, FBI, Secret Service Warn Of Targeted Ransomware, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited November 19, 2025).

54. Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

55. Plaintiff has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

56. Plaintiff suffers from hyper severe anxiety, and the Data Breach has significantly aggravated and intensified that condition, causing ongoing emotional distress.

57. Plaintiff has suffered actual injury in the form of damages to and diminution in the value of his Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

58. Plaintiff suffered actual injury from the exposure of his Sensitive Information—which violates his rights to privacy.

59. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

60. Plaintiff has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, which remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

61. The Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to the Defendant

62. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of their Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

63. Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

64. Plaintiff's and the Class's Sensitive Information carries substantial value on the black market. Stolen data routinely traffics for years, and cybercriminals commonly publish or sell

it on dark-web sites, rendering the information publicly available to buyers willing to pay a premium.

65. It can take victims years to spot identity theft, giving criminals plenty of time to use that information to commit acts of identity theft and fraud.

66. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

67. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

68. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

69. Defendant disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive

and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

70. Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant has Failed to Adhere to FTC Guidelines***

71. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

72. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that it keeps;

b. properly dispose of Sensitive Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

73. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

74. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; ad verify that third-party service providers have implemented reasonable security measures.

75. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

76. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant has Violated HIPAA***

77. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep Defendant's clients' current and former patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [28]

[28] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers

78. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[29]

79. The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

---

[29] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5);

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

80. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fails to Comply with Industry Standards***

81. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

82. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

83. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

84. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

85. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

86. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> All individuals residing in the United States whose Sensitive Information was compromised in the Data Breach experienced by Defendant including all those who received notice of the Data Breach.

87. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys,

successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

88. Numerosity. The Class is sufficiently numerous that joinder is impracticable. Plaintiff does not yet know the exact number of affected individuals but believes the Class consists of thousands of members. Defendant's records, obtainable in discovery, will identify the precise number.

89. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g. Whether computer hackers obtained Class Members' Private Information in the Data Breach;

h. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's conduct was negligent;

k. Whether Defendant breached implied contracts for adequate data security with Plaintiff and Class Members;

l. Whether Defendant was unjustly enriched by retention of the monetary benefits conferred on it by Plaintiff and Class Members;

m. Whether Defendant failed to provide notice of the Data Breach in a timely manner; and,

n. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

90. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

91. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

92. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' Private Information

was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

93. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

94. Likewise, particular issues under Fed. R. Civ. P. 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

b. Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

c. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d. Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

e. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

95. Finally, all Members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent Notice Letters by Defendant.

**COUNT I**
**Negligence**
**(On behalf of Plaintiff and the Class)**

96. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

97. Plaintiff and members of the Class (or their third-party agents) entrusted their Sensitive Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

98. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the

compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

99. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

100. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Sensitive Information.

101. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

102. Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

103. Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

104. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence Per Se**
**(On behalf of Plaintiff and the Class)**

105. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

106. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

107. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect its clients' current and former patients' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Sensitive Information.

108. Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

109. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its consumers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

110. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the

healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

111. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

112. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damage that would result to individuals in the event of a breach, which ultimately came to pass.

113. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

114. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

115. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

116. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

117. Had Plaintiff and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendant with their Sensitive Information.

118. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

119. As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

120. Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

**COUNT III**
**Breach of Implied Contract**
**(On behalf of Plaintiff and the Class)**

121. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

122. Plaintiff and Class Members either directly contracted with Defendant or Plaintiff and Class Members were the third-party beneficiaries of contracts with Defendant.

123. Plaintiff and Class Members (or their third-party agents) were required to provide their Sensitive Information to Defendant as a condition of receiving services provided by Defendant. Plaintiff and Class Members (or their third-party agents) provided their Sensitive Information to Defendant or its third-party agents in exchange for Defendant's services.

124. Plaintiff and Class Members (or their third-party agents) reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

125. Plaintiff and Class Members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

126. Plaintiff and the Class Members (or their third-party agents) accepted Defendant's offers by disclosing their Sensitive Information to Defendant or its third-party agents in exchange for services.

127. In turn, and through internal policies, Defendant agreed to protect and not disclose the Sensitive Information to unauthorized persons.

128. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's Sensitive Information.

129. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Information.

130. After all, Plaintiff and Class Members (or their third-party agents) would not have entrusted their Sensitive Information to Defendant (or their third-party agents) in the absence of such an agreement with Defendant.

131. Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

132. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

133. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

134. Defendant materially breached the contracts it entered with Plaintiff and Class Members (or their third-party agents) by:

a. failing to safeguard their Sensitive Information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Sensitive Information that Defendant created, received, maintained, and transmitted.

135. In these and other ways, Defendant violated its duty of good faith and fair dealing.

136. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed supra).

137. On information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the dark web.

138. Plaintiff and Class Members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**COUNT IV**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

139. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

140. Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendant benefitted from using their Sensitive Information to provide dental retail software services.

141. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members (or their third-party agents). And Defendant benefited from receiving Plaintiff's and Class members' Sensitive Information, as this was used to provide dental benefit services.

142. Plaintiff and Class members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

143. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' Sensitive Information.

144. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

145. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' payment because Defendant failed to adequately protect their Sensitive Information.

146. Plaintiff and Class members have no adequate remedy at law.

147. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## COUNT V
## Invasion of Privacy
## (On behalf of Plaintiff and the Class)

148. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

149. Plaintiff and Class Members had a legitimate expectation of privacy regarding their Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

150. Defendant owed a duty to Plaintiff and Class Member to keep their Sensitive Information confidential.

151. The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Sensitive Information is highly offensive to a reasonable person.

152. Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Sensitive Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

153. Defendant's failure to protect Plaintiff's and Class Members' Sensitive Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

154. Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

155. Because Defendant failed to properly safeguard Plaintiff's and Class Members' Sensitive Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

156. As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

157. As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

158. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Sensitive Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

159. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

160. Plaintiff, on behalf of him and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Sensitive Information.

161. Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE**,** Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grants the following:

A. For an Order certifying this action as a class action and appointing Plaintiff and their counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix. requiring Defendant to conduct regular database scanning and security checks;

x. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal

security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xvi. for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the

class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of actual damages, compensatory damages, statutory damages, and nominal damages, in an amount to be determined, as allowable by law;

E. For an award of punitive damages, as allowable by law;

F. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

G. Pre- and post-judgment interest on any amounts awarded; and

H. Such other and further relief as this court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all triable issues.

Dated: November 20, 2025

Respectfully submitted,

*/s/ Bryan L. Bleichner*

Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South
Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Facsimile: (612)-336-2940
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

*Counsel for Plaintiff and the Proposed Class*